968 So.2d 294 (2007)
RICHLAND PARISH POLICE JURY, Plaintiff-Appellee
v.
L. Donald DEBNAM and Joyce Berry Debnam, Defendants-Appellants.
No. 42,421-CA.
Court of Appeal of Louisiana, Second Circuit.
October 17, 2007.
Rehearing Denied November 29, 2007.
*297 Frederic C. Amman, III, Monroe, for Appellants.
David P. Doughty, Rayville, for Appellee.
Before STEWART, CARAWAY and LOLLEY, JJ.
STEWART, J.
Donald and Joyce Debnam ("the Debnams") appeal the trial court's denial of their exception of no cause of action and exception of no right of action, reconventional demand, and the issuance of a permanent injunction against them prohibiting the construction of any obstructions hindering the servitude of the Richland Parish Police Jury ("Police Jury") over the Debnam property and allowing the Police Jury to enter the Debnam property and remove any constructions burdening their servitude. Because we find that the trial court erred in its determination that the Police Jury demonstrated the requisite damage to pursue this action, we reverse the decision of the trial court in part, affirm in part, and render judgment as outlined herein.

FACTS
The Debnams own 120 acres situated on the north side of Ruff Road in Richland Parish. Ruff Road runs east and west and forms the south boundary of the property. Cypress Creek runs in a generally north-south direction across their property. The Debnams constructed a dam, earthen works, and other structures on Cypress Creek adjacent to Ruff Road in an attempt to improve drainage on their property.
On the north of the Debnams' property, the Police Jury has a drainage project that connects Louisiana State Highway 183 on the east to Gum Bayou and Mercer Break on the west. This canal is designated as W-27 in the Richland Parish Drainage System. The canal carries water from east to west across the north portion of the Debnams' property. The Police Jury placed a low water crossing in the W-27 canal which allegedly caused water to flood the Debnam property. As a result, the Debnams placed weirs with eight inch pipes beneath the weirs to stop the flow of Cypress Creek and to stop erosion.
The Police Jury claims that a 300-acre tract of land laying north and south of Ruff Road, including the defendants' property, had been adversely affected by the *298 defendants' actions impeding the natural drain. Consequently, the Police Jury filed a petition claiming that it had a servitude of natural drain from Cypress Creek across the Debnams' property from south to north from Ruff Road to the W-27 canal and that these constructions created an obstruction for drainage for Ruff Road and its drainage ditch. The Police Jury also claims the status of a dominant estate owner due to its ownership of Ruff Road. The Police Jury further contended that the local farmers would suffer serious and immediate damage from the obstructions of the natural flow of Cypress Creek and requested a temporary restraining order.
The Debnams filed a reconventional demand claiming that Cypress Creek runs naturally from north to south across their property and that the Police Jury did not have a natural servitude of drain. Moreover, the Debnams asserted the Police Jury obstructed the flow of the W-27 canal at the end of Nicole Road and caused damage to their property. They also filed exceptions of no right of action and no cause of action.
Following a trial on the merits on September 25, 2006, the trial court determined that the Police Jury had a servitude of drain flowing from south to north across the Debnam property. The Police Jury was granted a permanent injunction prohibiting the construction of any impediments to its servitude of drainage and was granted permission to enter the Debnam property and remove any obstructions that had already been constructed at the Debnams' cost. This appeal ensued.

DISCUSSION
Standard of Review
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La. 1989). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.
We make several observations concerning the trial court's finding of facts regarding the flow of the water on the Debnams' tract of land and the 300-acre area of dispute. First, the trial court found that the natural flow of the water was from south to north. This finding, while not completely incorrect, is somewhat narrow in its focus in that the maps and the flood of 1927 referred to in the record demonstrate that all of the water along Cypress Creek flowed from north to south. In fact, it is the parish constructed ditch (W-27) that constitutes the north boundary of the Debnams' property and stops all water north of the ditch from flowing south from Cypress Creek and diverts it in a westerly flow across the property. This diversion of water by W-27 stops water from flowing south, and at some limited points causes water to flow northward. Nonetheless, the undisputed testimony reveals that the land south of *299 W-27 gets saturated when Cypress Creek gets full and the southward flow of the water across W-27 occurs. Moreover, the maps in the record indicate that the natural convergence of Cypress Creek and Gum Bayou is south near Fountenbury Road as evidenced by the southward flow of the tributary patterns. Consequently, while the trial court was technically correct in its determination that there are areas where the flow of water is from south to north, the gravamen of evidence demonstrates that across the 300 acre tract of land at issue, the natural flow of water is from north to south.
The second issue we note with respect to the trial court's ruling is its limited determination of the cause of impediments to the flow of water across the 300 acre tract of land. The Police Jury contends that the constructions on the Debnam property are the sole cause of the impediment to water flow on the land. It should be noted that the largest manmade impediment to the flow of water is not the dams constructed by the Debnams but Ruff Road which traverses the 300 acre tract in an east-west fashion. Over half of this tract of land lies south of Ruff Road. The Police Jury's expert, Mr. Tommy Burgess, testified that the southward flow of the water is also slowed by the two 36' culverts along Cypress Creek that slow and trap the flow of heavy rainwater. Mr. Burgess also cited the defendants' newly constructed railroad tie structure along the Ruff Road ditch as a contributing factor to the slowing of the flow of water. Lastly, Mr. Burgess cited the flawed topography of certain portions of the 300 acre tract that hinder the flow of water.
Now that we have determined that there are other contributing factors to the slowing of the flow of the water, other than the dams constructed by the Debnams, we must examine the issue of who is actually damaged. The drainage area north of Ruff Road is primarily owned by the Debnams. They obviously are not alleging harm caused by their actions with the water standing on their land. Another small tract of remaining land north of Ruff Road is heavily wooded and contains a portion of Cypress Creek south of W-27. It is certainly reasonably that this tree-filled area is contributing to the backing up of water onto the Debnams' land and surrounding lands and slowing its return to W-27. The trial court limited its determination to the cause of the slowing of the water to the constructions of the Debnams without taking into account the effect of this wooded area.
Exceptions of No Cause/ No Right of Action
A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition. Hayes v. Gallagher Bassett Services, Inc., 41,579 (La.App. 2d Cir.12/13/06), 945 So.2d 911, writ denied, XXXX-XXXX (La.3/30/07), 953 So.2d 73. In Dejoie v. Medley, 41-974, 41,333 (La.App. 2d Cir.12/20/06), 945 So.2d 968, this court explained that the exception is triable on the face of the petition, each well-pled fact of which must be accepted as true. There is no requirement that the court accept as true any conclusions of law alleged in the petition. No evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931.
Generally, an action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. Industrial Companies Inc. v. Durbin, XXXX-XXXX (La.1/28/03), 837 So.2d 1207. The purpose of the exception of no right of action is to determine whether a plaintiff has a real and actual interest in an action or belongs to a particular *300 class to which the law grants a remedy for a particular harm alleged. Wallace v. Nathan, 96-119 (La.App. 5 Cir. 7/30/96), 678 So.2d 595. (Emphasis supplied). The exception of no right of action is peremptory and can be brought at any time, including on appeal. Lambert v. Donald G. Lambert Constr. Co., 370 So.2d 1254 (La. 1979). Further, La. C.C.P. art. 927 provides that a peremptory exception of no right of action may be noticed by either the trial or appellate court of its own motion. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. The exception of no right of action is directed to showing that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. La. C.C.P. art. 927; Dufour v. Westlawn Cemeteries, Inc., 94-81 (La.App. 5 Cir. 6/28/94), 639 So.2d 843. The determination of whether a plaintiff has a right of action is a question of law. Horrell v. Horrell, 99-1093 (La.App. 1 Cir. 10/6/00); 808 So.2d 363, writ denied 01-2546 (La.12/7/01); 803 So.2d 971. Accordingly, we review exceptions of no right of action de novo. Mississippi Land Co. v. S & A Properties II, Inc., XXXX-XXXX (La.App. 3 Cir. 5/8/02), 817 So.2d 1200.
Unlike the exception of no cause of action, evidence is admissible on trial of an exception of no right of action in order to determine whether the plaintiff is legally invested with the right to stand in judgment. Guenard v. Key, 131 So.2d 108 (La.App. 2 Cir. 6/1/61). It is therefore proper to hear testimony on an exception of no right of action. Waterhouse v. Star Land Company, 139 La. 177, 71 So. 358 (1916). The burden of proof of establishing the exception of no right of action is on the exceptor. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748.
The trial court denied the Debnams' exceptions of no right and no cause of action. Although we choose not to reverse on the denial of the exceptions, but for reasons more fully explained hereafter, we find error in the trial court's limited determination of the various causes and contributors to the dispute at issue. The southern portion of the 300 acre tract of land that comprises the battleground for the present drainage dispute involves up to six other landowners who are not parties to the instant suit.
As this area has not been subject to a comprehensive drainage program, the Police Jury's cause of action is limited to its position as an owner of a dominant upstream estate. However, the Police Jury did not demonstrate that its ownership of Ruff Road, as a public road servitude or otherwise, was damaged by the Debnams' actions. The Ruff Road ditches are doing what they have always done, hold water. In light of the fact that the trial court failed to take into account the indispensable parties-the adjoining landowners, who actually are the parties experiencing any alleged damage under the facts presented-and the other factors discussed above that have contributed to the slowing of the water, we find the trial court's decision to be manifestly erroneous. On the record before us, the Police Jury has not shown that its road was damaged. Moreover, in a dispute involving all of the landowners of the 300 acre tract under the Civil Code principles for natural servitudes, La. C.C. art. 655 et seq., any relief may require contributions from the Debnams, the Police Jury, and the owner of the wooded tract lying along Cypress Creek northwest of the Debnams' property. *301 Therefore, we find that the trial court erred in its determination that the Police Jury sustained its burden of proof for damages, and we note the lack of indispensable parties concerning the alleged flood damages in the 300-acre area.
Police Power Servitude
The Police Jury also asserted that it is empowered to bring this action pursuant to La. R.S. 38:113 which states:
The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.
However, in Simmons v. Board of Commissioners of Bossier Levee District, 624 So.2d 935, 952 (La.App. 2d Cir.1993) we stated:
It has been held that the statute is not self operative, and that the servitude will be recognized only when the levee or drainage district proves three things: that the drainage channel was previously improved by the district or adopted without prior improvement as a necessary part of or extension to improved drainage channels; that the drainage channel is a public channel; and that the channel was selected by the district and recommended and approved by the Office of Public Works.
In other words, under this statute, the Police Jury does not have to allege that it is the dominant estate owner to bring a cause of action against a land owner. The W-27 ditch was dug by the Police Jury to aid the lands north of it and as such, is entitled to a public works servitude. However, the record does not demonstrate that the lands south of W-27 were ever improved by the state or water district. The Police Jury contends that these waters must drain back north against the natural flow of Cypress Creek. However, there is nothing in the record to demonstrate that the Police Jury, state, or any other public entity ever spent money to ensure and improve drainage along this area of Cypress Creek. To allow the trial court's judgment to stand would essentially force the Debnams to initiate a public works project at their costs on their property in the hope of improving the entire area's drainage. We find that impermissible under the facts of this case. The Police Jury did not satisfy the requirements of the Simmons test.
In sum, we find that the trial court erred in singling out the Debnams as the sole cause of the drainage problems at issue, because the record demonstrates that there were multiple causes of equal weight contributing to the damage complained of by the Police Jury, including some actions of the Police Jury itself. Consequently, we reverse the judgment of the trial court and render judgment in favor of the Debnams.
Reconventional Demand
The Debnams filed a reconventional demand asking the trial court to order the Police Jury and adjoining property owners to place larger culverts at the locations of the 36-inch culverts between Ruff Road and Futch Road to stop the purported blockage of Nicole Road and the flooding of the land that is at issue. However, *302 we must deny the Debnams' reconventional demand for the same reason that we are reversing the trial court in that there are several contributing causes to the condition of the property that were not considered by the trial court and there are parties that have an interest in this matter that are not a part of the dispute. Thus, we affirm the judgment of the trial court as to its denial of the Debnams' reconventional demand.

CONCLUSION
Based on the above and foregoing we reverse the trial court's order allowing the Police Jury to enter the Debnam property and remove the obstructions built by the Debnams and its issuance of a permanent injunction prohibiting the Debnams from constructing any dams, dirt works, or other constructions on their land to constrict the flow of Cypress Creek. We affirm the trial court insofar as it denies the Debnams' reconventional demand. Costs are assessed to the Police Jury.
AFFIRMED IN PART. REVERSED IN PART AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY and LOLLEY, JJ.
Rehearing denied.